# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

Cindy Lee Miller                                                                 **Plaintiff**

v.                          **No. 4:14CV00476 JLH-JTR**

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                          **Defendant**

## <u>Recommended Disposition</u>

### Instructions

The following recommended disposition was prepared for U.S. District Judge J. Leon Holmes.   A party to this dispute may file written objections to this recommendation.   An objection must be specific and state the factual and/or legal basis for the objection.   An objection to a factual finding must identify the finding and the evidence supporting the objection.   Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]   The objecting party must serve the opposing party with a copy of an objection.   Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Holmes may adopt the recommended disposition without independently

---

[1]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2]*Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

reviewing all of the record evidence.

## Reasoning for Recommended Disposition

Cindy Lee Miller seeks judicial review of the denial of her application for social security disability benefits.[3]  Miller last worked in December 2011, as a certified nursing assistant (CNA).  She alleges disability since that time and bases her claim on seizures and back problems.

**The Commissioner's decision**.  After considering the application, the ALJ identified severe impairments — T12 burst fracture status post open reduction internal fixation at T11-L1 and epilepsy[4] — and determined Miller can do some light work, to include her past work as production/assembly worker.[5]  The ALJ made an alternative finding that Miller can do other available work.  The ALJ concluded that Miller is not disabled and denied the application.[6]

After the Appeals Council denied review,[7] the ALJ's decision became the

---

[3]SSA record at pp. 134 & 141 (applying on April 3, 2012 and alleging disability beginning Dec. 26, 2011).

[4]*Id*. at p. 21.

[5]*Id*. at pp. 22 & 27.

[6]*Id*. at p. 29.

[7]*Id*. at p. 1.

Commissioner's final decision for the purpose of judicial review.[8]  Miller filed this case to challenge the decision.[9]  This recommendation explains why the court should affirm the decision.

**Miller's allegations**.  Miller challenges most aspects of the decision: (1) record development, (2) consideration of the medical listings, (3) evaluation of her credibility, (4) the determination about her ability to work, (5) the finding about the ability to do past work, and (6) the alternative finding about other available.[10]

**Applicable legal principles**.  When reviewing a decision denying an application for disability benefits, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[11]  For substantial evidence to exist, a reasonable mind must accept the evidence as adequate

---

[8]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[9]Docket entry # 1.

[10]Docket entry # 12.

[11]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

to support the determination that Miller can do some light work and that work exists that Miller can do.[12]

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[13]   The ALJ determined Miller's impairments posed some non-exertional limitations and placed the following limitations on light work: (1) occasional stooping and crouching; (2) no climbing ladders/ropes/scaffolds; and (3) avoid moderate exposure to hazards like unprotected heights and moving machinery.[14]  The question for the court is whether a reasonable mind will accept the evidence as adequate to show Miller can work within these parameters.

A reasonable mind will accept the evidence as adequate for the following reasons:

> 1. **Miller's impairments are controlled by treatment**. "An impairment
> which can be controlled by treatment or medication is not considered
> disabling."[15]  Miller claims she has been disabled since December 2011
> when she stopped working, but the impairments underlying her claim
> manifested on January 20, 2012.  On that day, Miller presented to a

---

[12]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) (substantial evidence exists if a reasonable mind will accept evidence as adequate to support conclusion).

[13]20 C.F.R. §§ 404.1567(b) & 416.967(b).

[14]SSA record at p. 22.

[15]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

hospital emergency room and complained about a seizure-like episode and severe back pain.[16]

Miller tested positive for amphetamine, benzodiazepine, and marijuana.[17] Diagnostic imaging showed a burst fracture in the mid-spine at level T12.[18]   The fracture was surgically repaired with bone fusion and fixation hardware at levels T11 to L1.[19] Nineteen weeks later, Miller was better; the hardware was stable.[20]  Her neurosurgeon asked her to return in four months, but the record reflects no return visit.

After back surgery, a neurologist treated Miller for seizures and headaches.[21]   With medication adjustments, convulsive seizures resolved,[22] but Miller then complained about spells.  The neurologist suspected the spells were complex partial seizures.[23]  The neurologist made another medication adjustment and instructed Miller to let him know if the adjustment failed to resolve the issue within two weeks.  The record reflects no followup.  The absence of followup suggests the medication adjustment resolved the spells.

The foregoing sequence of events shows treatment controls Miller's symptoms.  Her doctors asked her to return if she continued to have problems.  Miller has medical insurance so she could have returned if symptoms were severe.  The failure to return indicates symptoms were

---

[16]SSA record at p. 258.

[17]*Id*. at p. 262.

[18]*Id*. at pp. 299 & 302.

[19]*Id*. at pp. 307-09.

[20]*Id*. at p. 397.

[21]*Id*. at p. 370.

[22]*Id*. at p. 425.

[23]*Id*. at p. 478.

controlled.

A reasonable mind will accept the evidence as adequate to support the decision because the ALJ accounted for residual back pain and fixation hardware by limiting stooping and crouching, and accounted for a possible seizure by eliminating climbing ladders/ropes/scaffolds and moderate exposure to hazards.

2. **The record was fully and fairly developed.**  Miller challenges the development of the record; she says the ALJ should have ordered a consultative mental exam and neurological exam.  The ALJ must order "medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."[24]

No need existed for a neurological exam because Miller was under the care of a neurologist.  Treatment notes are detailed.  Neurological exams were negative.[25]  Treatment notes reflect reports of mood changes with certain medications.[26]  The neurologist adjusted medication to improve Miller's symptoms.  No need exited for a mental exam because this evidence suggests no severe mental impairment.[27]

---

[24]*Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994).

[25]SSA record at pp. 371-72 & 425.

[26]*Id*. at p. 369 (anti-seizure medication helped seizures and headaches, but makes her moody and irritable, medication changed), p. 426 (no complaints about depression, but new medicine isn't working as well, dose increased), p. 425 (medication for depression doesn't seem to be helping, has a flat affect, dose increased) & p. 478 (no more convulsions, but still having problems with increased anxiety, medication adjusted).

[27]*Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012) ("If sufficient evidence alerts the ALJ to the possibility of a severe mental impairment, the ALJ must further develop the record about mental impairments before ruling on the severity of the claimant's impairment(s).").

3. **No basis exists for disability under a listing**. If an impairment meets or medically equals one of the impairments listed in Appendix 1 of the Commissioner's regulations, the claimant is entitled to benefits.[28] Miller insists her seizures meet a neurological listing, but she doesn't identify a particular listing or explain why she satisfies the listing.

The relevant listings are the ones for epilepsy: listing 11.02 convulsive epilepsy and 11.03 nonconvulsive epilepsy. The neurologist's treatment notes don't mention epilepsy, but even if the notes included a diagnosis of epilepsy, symptoms satisfy a listing only if they persist "in spite of at least 3 months of prescribed treatment."[29]   Treatment notes shows Miller's symptoms improved with treatment. The ALJ did not err by finding Miller does not meet a listing.

4. **The ALJ sufficiently addressed credibility**. An ALJ must evaluate the claimant's credibility because subjective complaints play a role in determining the claimant's ability to work.[30] Miller contends the ALJ's credibility evaluation is insufficient, but the ALJ followed the required two-step process and considered the required factors,[31] so the dispositive question is whether substantial evidence supports the credibility evaluation.

The ALJ properly relied on decreased back pain and seizures with treatment, independence with personal needs, caring for two children, and exams showing Miller walks normally and rises easily from sitting.

---

[28]20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

[29]20 C.F.R. pt. 404, subpt. P, app. 1, §§ 11.02 & 11.03.

[30]*Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005).

[31]SSR 96-7p, *Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

The record supports these reasons.  The ALJ recognized that Miller "has some difficulties related to her impairments," but was "not persuaded that is she is totally disabled and unable to pursue"[32] some light work. A reasonable mind will accept the evidence as adequate to show Miller over-stated her limitations.

5.  **Vocational evidence supports the decision**.  After determining Miller's ability to work, the ALJ asked a vocational expert about Miller's past work.  The vocational expert classified Miller's past work as a CNA as medium work done as heavy work and her work as a production/assembly line worker as light work done as heavy work.[33] According to the vocational expert, a person who can do light work with the ALJ's limitations can work as a production/assembly line worker. That opinion supports the determination that Miller can do her past work.

The ALJ asked about other available work.  The vocational expert identified storage rental clerk, furniture rental consultant, and fast food worker as available jobs.[34]  These jobs show work exists that Miller can do, regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[35]

Miller suggests the vocational expert's testimony is ambiguous about whether a machine operator or a fast food worker are exposed to moderate hazards, but read in context, the testimony indicates machine operator and a fast food worker are not exposed to moderate hazards.[36]

---

[32]SSA record at p. 27.

[33]*Id*. at p. 56.

[34]*Id*. at pp. 57-58.

[35]42 U.S.C. § 1382c(a)(3)(B).

[36]The relevant testimony follows:

**Miller's representative**: … The hypothetical from judge stipulated not even moderate hazards, would either of the machine operator job of the

Miller says her impairments prevent the identified jobs, but her argument depends on her allegation of symptoms of disabling seizures. The ALJ properly determined that Miller over-stated her symptoms. To the extent she relies on primary care provider medical statements,[37] treatment notes do not support the reported limitations.[38]

## Conclusion and Recommended Disposition

Substantial evidence supports the ALJ's decision because a reasonable mind will accept the evidence as adequate to support the decision. Miller's impairments do not prevent light work. The ALJ made no reversible legal error. For these reasons, the undersigned magistrate judge recommends DENYING Miller's request for relief

---

fast food worker job be exposed to moderate hazards?

**Vocational expert**: Yes, they could.

**Miller's representative**: so they wouldn't have moderate hazards in those jobs?

**Vocational expert**: That's right.

SSA record at p. 59-60.

[37]*Id*. at pp. 455 & 484.

[38]*Id*. at pp. 385-86, 433 & 466.

(docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 14th day of December, 2015.


_____
United States Magistrate Judge